## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 19-10459-RWZ-48** |
| | ) | |
| **JEREMIA MEDINA,** | ) | |
| **Defendant.** | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S DEFENDANT'S EMERGENCY MOTION FOR RELEASE ON CONDITIONS DUE TO THE COVID-19 PANDEMIC[1]

The United States of America, by Andrew E. Lelling, United States Attorney, and Glenn A. MacKinlay, Assistant United States Attorney, hereby respectfully oppose the defendant, Jeremia Medina's ("Medina" or the "defendant") Emergency Motion for Release on Conditions Due to the COVID-19 Pandemic (D. 637).   After a hearing and a Voluntary Order of Detention was issued (D. 254), the defendant now seeks reconsideration and release based primarily on the ongoing COVID-19 pandemic.

The Government appreciates the gravity of the COVID-19 pandemic and acknowledges that it presents a serious national and state public health emergency.  However, even in the midst of this pandemic, the factors set forth in 18 U.S.C. § 3142 still guide the Court in determining, on a case-by-case basis, whether pretrial release is appropriate, and as the evidence adduced at the defendant's detention hearing amply shows, he poses a danger to the community and no conditions or combination of conditions can adequately address these risks.  The defendant's Motion should be denied.

---

[1] Docket Entries are identified by docket and page numbers.  References to the December 19, 2019 detention hearing transcript (D. 453) are by page number (Tr. _).

## THE DETENTION HEARING

The Government moved for detention under 18 U.S.C. § 3142(f)(1)(C) & (E), and

(f)(2)(A) & (B).  On December 13, 2019, a detention hearing was held with one witness called to

testify for the Government, FBI Special Agent Craig Harvey and exhibits were also admitted.

(D. 453).

In testimony and exhibits, the defendant was identified as a former Inca and present the

Enforcer for the New Bedford Chapter of the Latin Kings. Tr. 13.  Those duties were described

during the hearing: "So the Inca is the leader of the chapter. He is responsible for ensuring that

all members of the chapter follow the bylaws. He is responsible for putting out all orders and

determining the conduct of all chapter members.   The enforcer specifically handles violations,

terminations, any violence that needs to be done against rival gangs, cooperating witnesses. The

enforcer's specialty is violence." *Id.*

A series of recordings were further admitted.  These materials pertained to the following

incidents:

- A December 10, 2018 recording of a garage beating of a member -- discipline for spreading rumors.  The defendant participated in the beating.  Another member beat the victim with a baseball bat – which can be plainly seen (and indeed heard) on the recording. Tr. 18.

- A February 3, 2019 recording, where the defendant and other Latin Kings had a meeting described as: "So this was an audio recording collected by CW-9 regarding a beating that had taken place. On the recording Jorge Rodriguez and other members discuss this beating or violation that was given out, and Jorge Rodriguez makes a remark to the defendant [Medina] participating in the beating and having blood on his shirt." Tr. 23.

- A December 2, 2019 "trial," a crown council authorized assessment of violations, in Connecticut in which the defendant traveled there with other Latin Kings gang members and participated in the proceeding. Tr. 23-26.

- A October 24, 2019 recorded meeting where the testimony described the words of "Jose Rodriguez, a/k/a King Stutter, brother of Jorge Rodriguez. He is indicating to

members that they should not be calling him when rival gang members are seen. *There's an active termination on them. They can go ahead and move on them, shoot them. They don't need to contact him first.* Additionally, Jeremia Medina addresses the group at the end indicating that if he finds out anyone is contacting Mr. Jose Rodriguez in this way, *either him, or he says Gordo, who we know to be Michael Cotto, will come see them, and you know what that means*."(emphasis added).  Tr. 27.

- A July 18, 2019 recording that captured the defendant (MEDINA) and another gang member, as the testimony described:  "preparing to cook cocaine base at 238 Davis Street, Apartment 10, New Bedford, MA. MEDINA can be seen unpacking supplies, including a pot, baking powder and plastic baggies in the kitchen. MEDINA can also be seen filling the pot with water to cook the cocaine base. Additionally, [Roberto] VARGAS can be seen holding a kilogram of suspected cocaine"



Tr. 28-29 and D. 12, Exh. 1.

## <u>COURT'S ORDER OF DETENTION</u>

The Court entered a voluntary order of detention without prejudice following the Government's evidence and cross-examination of the government's witness by the defendant. D. 254.

**LEGAL STANDARD**

A defendant must be detained pending trial if, after a hearing, the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).[2]   In determining whether any conditions of release will reasonably assure the defendant's appearance and the safety of any other person and the community, the Court must consider the factors set forth in 18 U.S.C. § 3142(g), which include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger that the defendant's release would pose to any other person or the community.

In addition, there is a rebuttable presumption under 18 U.S.C. 3142(e)(3)(1), based upon Count Two. See D. 1.  Here, the defendant did not introduced sufficient evidence to rebut the presumption. The evidence established "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" and "[b]y a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required."

Additionally, the Court may "permit the temporary release" of the defendant to the custody of "a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another

---

[2] As noted by the Senate Judiciary Committee: "This reference to safety of any other person is intended to cover the situation in which the *safety of a particular identifiable individual, perhaps a victim or witness*, is of concern, while the language referring to the safety of the community refers to the danger that *the defendant might engage in criminal activity to the detriment of the community*." S. Rep. No. 98-147, at 39 (1983) (emphasis added; footnotes omitted); *see also United States v. Patriarca,* 948 F.2d 789, 792–793 (1st Cir. 1991).

compelling reason."  18 U.S.C. § 3142(i).  The defendant carries the burden of showing that his

release is necessary to the preparation of his defense or for another compelling reason.  *See United

States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011) ("A defendant has the burden of

showing that temporary release is 'necessary for preparation of the person's defense' under Section

3142(i).") (citations omitted).

## ARGUMENT

### I.      THE DEFENDANT SHOULD BE DETAINED

#### A.  The Defendant Poses an Intolerable Risk of Danger

The Government's witness and exhibits at the detention hearing established that:

- Medina was the former "Inca" of the New Bedford chapter of the Latin Kings with responsibilities that included setting rules and insuring compliance.
- Medina is the present Enforcer of the chapter with responsibilities that include using violence to enforce the rules and regulations.
- Medina participated in Latin Kings organizational meetings that in addition to discussing planning of events and violence against rivals, also included in meting out discipline by beating members.  Medina participated in a beating and warned members to get in line with their leadership or face violence from himself, and others.
- Medina was caught on video plainly helping a fellow gang member cook large amounts of crack cocaine.  The proceeds of such drug dealing support the illegal activities of the gang.
- The detention affidavit, Exh. 1 at the hearing, sets forth in great detail the structure and violence that the gang readily employs.

The Government's evidence demonstrates that no condition or combination of conditions

could reasonably ensure the safety of the community if he were released.

#### B.  The Defendant Poses an Intolerable Risk of Flight

The defendant presents an intolerable risk of flight due to the strength of the case against

him and the serious penalties that he faces.  The significant drug weight attributable to him,

based *inter alia,* the evidence of him cooking a kilogram of crack cocaine, and the testimony of

CW-3, provides strong motivation for his pretrial flight justifying detention on these grounds as well.[3]

### C. The Defendant's Criminal Record Supports Detention

Medina is certainly no stranger to law enforcement.  He has accumulated the following adult criminal convictions:

1) In 2011, Medina was convicted of Possession with Intent to Distribute Heroin. He was sentenced to three years to three years and one day incarceration;

2) In 2008, Medina was convicted of Possession with Intent to Distribute Cocaine base.  He was sentenced to 2½ years in jail with 18 months of the sentence suspended and probation;

3) In 2006, Medina was convicted of Possession with Intent to Distribute Cocaine. He was sentenced to three years of probation.

Medina's criminal record establishes him as a repeat offender drug dealer and also subjects him to sentencing as a career offender.  The Government estimates that Medina's present guidelines sentencing range is 262-327 months of incarceration upon a timely plea of guilty.  This hefty sentence faced by Medina significantly increases his risk of flight and supports the need to detain him on these grounds.

## II.   COVID-19 DOES NOT WARRANT THE DEFENDANT'S RELEASE

The COVID-19 pandemic, while undoubtedly serious and necessitating strong precautionary steps, particularly in detention facilities like Norfolk County House of Correction ("Norfolk") has not changed the facts and circumstances particular to the defendant that demonstrate his risk of danger to the community, and therefore does not warrant his release.

The defendant's argument for release relies primarily on generalized fears about the specter of a COVID-19 outbreak at his detention facility.  However, the defendant's speculative concerns

---

[3] The Government reserves the right to make additional arguments for detention on each of the asserted grounds after review of the U.S Probation office's bail report.

about the risk to his health in the event of an outbreak do not satisfy the requirement of 18 U.S.C. § 3142(g) and they do not constitute a "compelling reason" justifying his release under 18 U.S.C. § 3142(i), particularly in light of the extensive precautionary measures that Norfolk has taken to reduce the risk of transmission.  And they are working.  As of April 18, 2020, there are no cases of inmates testing positive for the virus.  Moreover, one staff nurse tested positive over a month ago and was successfully treated.

Moreover, the defendant does not show that his proposed plan for release would in fact mitigate his risk of contracting COVID-19, nor does he make any serious effort to show that if he were to be released he would not pose a continuing danger to the community.  Additionally, the *defendant does not claim to suffer from any particular condition that places him at greater risk to contract or to suffer complications from COVID-19.*  (emphasis added).  For these reasons, he fails to carry his burden to show that his temporary release is warranted under Section 3142(i), or that the Section 3142(g) factors were wrongly considered.

### A.   *The Speculative Risk of COVID-19 Is Not A Compelling Reason For Release*

The defendant has not demonstrated that the speculative risk of a COVID-19 outbreak at Norfolk poses a risk to his health.  The Government interprets this argument to be seeking release under 18 U.S.C. § 3142(i).

Although the courts have recognized that a defendant's medical condition can be a compelling reason justifying temporary release, they have only done so "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020).  Indeed, in the rare cases where courts have found a medical condition to be a compelling reason for release, the defendants were actually suffering from severe medical conditions that could not be adequately treated at their detention facilities. *See, e.g., United States v. Scarpa*, 815

F. Supp. 88 (E.D.N.Y. 1993) (releasing defendant who suffered from terminal AIDS that could no longer be managed by correctional authorities, where he was unlikely to survive long enough to stand trial, and "the restrictive terms of his house arrest," in connection with his physical incapacitation, "would effectively incapacitate [him] to the same extent as prison"); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 145 (D.P.R. 2002) (releasing defendant who sustained significant injuries from bullet wounds, including open wounds that required continued medical treatment that the Bureau of Prisons could not treat; the Marshal Service paid for the services of guards to supervise him; and he was unable to walk, suffered from partial paraplegia, remained in a lying position, had loss of function in his arms, and was thus not "mobile enough to roam in the community.").

Similarly, in other cases where the courts have released defendants based on their medical condition, the courts emphasized that the defendants had significant, life-threatening health problems that could not be treated in their detention facilities, and found that there were conditions of release that could ensure the safety of the community.  *See United States v. Johnston*, No. 17-00046 (RMM), 2017 WL 4277140, at *4 (D.D.C. Sept. 22, 2017) (finding that the defendant's "need for prompt cancer testing and treatment, paired with his belief" that his continued detention would delay such treatment "to a degree that imperils his life, rebuts the statutory presumption of detention," and that the court could ensure the safety of the community by imposing stringent "release conditions tailored to the nature of the charges [he] face[d] and his need for medical treatment."); *United States v. Adams*, No. 6:19-MJ-00087-MK, 2019 WL 3037042, at *2 (D. Or. July 10, 2019) (defendant rebutted presumption by showing "evidence of an extraordinary life-threatening medical condition the BOP cannot treat and further show[ing] the safety of the community may be reasonably assured through conditions of release.").

Comparatively, the defendant does not argue that he has contracted COVID-19 or that he has anything that could be described as symptoms.  Instead, he only raises concerns about the possibility of contracting it, *even though there are no reported cases among Norfolk detainees*. Nor does the defendant claim that he would not be able to receive adequate care at Norfolk if he were to contract the virus.  This falls far short of the severe injury and urgent need to obtain care outside of a detention facility that has warranted release in other cases.  As several courts have held, the speculative risk of a COVID-19 outbreak is not a compelling reason for release under Section 3142(i) even in cases where the defendant has an underlying medical condition that increases his or her risk of severe illness from the virus.  *See, e.g., United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (denying release despite the defendant's advanced age and history of stroke and heart attack where there were no reported cases of COVID-19 at his detention facility and the Bureau of Prisons was "taking system-wide precautions to mitigate the possibility of an infection within its facilities"); *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *8 (D. Kan. Mar. 25, 2020) (denying release of defendant whose diabetes put him at increased risk of serious illness from COVID-19 where the risk of an outbreak at his facility was speculative, he did not show that his proposed release plan would reduce his overall risk, and his release would put pretrial services and law enforcement at increased risk); *United States v. Lunnie*, No. 4:19-CR-00180 KGB, 2020 WL 1644495, at *5 (E.D. Ark. Apr. 2, 2020) (COVID-19 was not a compelling reason warranting release under 18 U.S.C. § 3142(i) where the defendant's arguments about a potential outbreak at his facility were speculative, he failed to show that his "lifelong bouts with bronchitis" increased his risk of severe illness if he were to contract COVID-19, and he did not demonstrate that "his proposed release plan would necessarily alleviate his overall COVID-19 risks," or the risks to the community).

Thus, the clear trend among several courts that have addressed this issue is to deny temporary release, even when the defendant raises individualized risk factors based on his or her health condition, where there is only a generalized concern about the potential of a COVID-19 outbreak and the detention facility is taking reasonable measures to mitigate the risk. *See United States v. Martin*, No. CR PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (finding that the COVID-19 pandemic was not new information warranting release under 18 U.S.C. § 3142(f)(2)(B), explaining: "while the record confirms that Martin has disclosed that he suffers from asthma, high blood pressure, and diabetes, this alone is insufficient to rebut the proffer by the Government that the correctional and medical staff at CDC are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus.").

Accordingly, in a case like this, where the defendant raises only speculative concerns about the risk of contracting a virus, but does not currently suffer from a medical condition that requires treatment outside of the detention facility, and has made no effort to explain why his continued detention would prevent him from obtaining adequate care if he were to become sick—no compelling reason exists to grant temporary release under Section 3142(i). *See United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (declining to reverse denial of motion for release based on health conditions under 18 U.S.C. § 3142(i) where the defendant did not identify any specific medical conditions and failed to "explain why his detention would prevent him from obtaining adequate treatment" for any condition that he did have).

### B. The Defendant's Proposed Release Would Not Mitigate the Risks of COVID-19 or His Danger to the Community

The defendant also does not show that his proposed plan for release would actually mitigate his risk of contracting COVID-19. Although he proposes release, he offers no evidence that his proposed plan would actually mitigate the risk of infection compared to the risk he faces while

detained at Norfolk.  Indeed, the defendant's bare-bones plan for release offers no details about the comparative risk he faces at home: he does not address who visits the proposed residence and whether they will be screened for COVID-19 prior to his interactions with them; he does not address his access to medical care if he were to become sick; and he fails to identify any specific COVID-19 precautions that are begin taken at his residence, such as requiring all members of the household to observe recommended social distancing, wear masks, and follow hygiene practices to reduce the risk of exposure to the virus.

Accordingly, there is no concrete evidence that the defendant's risk of contracting the virus would be any lower while released.  This is particularly true where he has not demonstrated that there are any protections against exposure to the virus than if he were to remain detained at Norfolk.  There, the sheriff has implemented extensive (and successful) precautionary measures to reduce the risk of infection to all inmates. *See Lunnie*, 2020 WL 1644495, at *5 (finding that the proposed release to home confinement was not "necessary" for a compelling reason under Section 3142(i) where it was not "tailored to mitigate . . . the defendant's overall COVID-19 risks," including because the defendant did not show that adequate COVID-19 precautions would be taken at his home and there was thus "nothing more than speculation that home detention would be less risky than living in close quarters with others" in jail, "which at least has screening practices and other reasonable COVID-19 precautions in place."); *Clark*, 2020 WL 1446895, at *6 (same).

Based on the foregoing, the defendant presents an overwhelming and unmitigated danger to the community if released, and an unreasonable risk of flight, neither of which are overcome by the unsubstantiated claim of fear of contracting the COVID-19 virus.  He simply must be detained.

## **CONCLUSION**

For all of these reasons, Medina's motion for release should be denied.


Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   s/ Glenn A. MacKinlay
Glenn A. MacKinlay
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

s/ Glenn A. MacKinlay
Assistant U.S. Attorney

Date: April 23, 2020